Case number 22-5009, Kristen H. Colindres and Edwin A. Colindres Vs. United States Department of State et al. Mr. Dempsey for the at-balance, Ms. Reno for the at-police. Good morning, counsel. Mr. Dempsey, please proceed when you're ready. Good morning, your honors. I'd like to reserve a few minutes for rebuttal. This court is now confronted with a case presenting the most extreme and tragic application of the doctrine of consular non-reviewability in any reported jurisprudence to date. Edwin A. Colindres came to the United States when he was 14 years old. His parents brought him here. He lived in New York and eventually resided in Jacksonville, Florida. He remained in the United States for 24 years, from January of 1995 until June of 2019, when he only departed the United States to re-process his consular down in Guatemala to come back in the United States the right way. This case arises because Appellate Colindres was sought to come under the shadows and to rectify his unlawful immigration status through the process implemented by DHS, United States Citizenship and Immigration Services. What we know about Eddie Colindres is that he has no criminal history. 24 years in the United States is not so much as a traffic ticket. He worked for a pool finishing company from 2007 to 2019, married in December of 2006, Appellate Colindres, a registered nurse who graduated at the top of her class and continues to work for Baptist Health in Jacksonville, Florida. The couple had a daughter in 2008. As to the lawfulness of the life led by Appellate Colindres, in the United States, the record contains 37 sworn letters of reference attesting to Appellate Colindres' good moral character. Moreover, in June 2018, in connection with his USCIS application for an unlawful presence waiver, USCIS, in coordination with the Federal Bureau of Investigation, conducted thorough security and background investigation for Appellate Colindres. And following that investigation and his clearance by the Federal Bureau of Investigation, USCIS approved Appellate Colindres' unlawful presence waiver. At that point, Appellate Colindres travels to Guatemala, which is required. You have to consular process and be admitted the right way. So he traveled to Guatemala on June 2016, 2019, and had his consular interview on July 10, 2019. So he was in Guatemala for 14 days. The only other history in the record is his 24 law-abiding years in the United States. During those two weeks, Appellate Colindres gathered police clearance letters from local and national Guatemalan authorities, and they were crystal clean. So we've got a clearance by the Federal Bureau of Investigation and USCIS. We've got Appellate Colindres living in the United States for 24 years, not getting so much as a traffic ticket. He's only in Guatemala for 14 days, and he has police clearance. And notwithstanding all this, the consular officer refused Appellate Colindres' Immigrant Visa, averting that he was inadmissible as an alien, that the consular officer knows or has reason to believe that he seeks to enter the United States to engage solely, principally, or incidentally in any other unlawful activity. We know from Mandel and Den, the most recent Supreme Court case on the doctrine of consular non-availability, 2015, that consular decisions are subject to a narrow scope of review. There are two elements that a consular decision has to have as constitutional muster. It has to be facially legitimate and bona fide. Facially legitimate is simple. That merely means that the consular officer must cite a valid ground of inadmissibility. That happened here. That first element is not an issue at all in this case. The second element is bona fide. That means either a citation to a statutory ground of inadmissibility that has a discrete factual predicate. You know what the State Department or the consular officer is thinking because it's obvious. Narcotics trafficking, terrorism, human trafficking. Or if the statutory ground of inadmissibility is divisible, then there must be a discrete fact in the record that provides at least a facial connection to the statutory ground of inadmissibility. That's what the heart of this case right there. Because the consular officer, without any explanation, any reference to any factual predicate, or any stated factual basis whatsoever, invoked 8 U.S.C. 1182.83.82. And that merely states that the consular officer believes they are coming to the United States to engage solely, principally, or incidentally in unlawful activity. What is it? It could be anything from the crime you were talking about in the prior matter to J.Y. It's completely ambiguous. Can I ask, there's also the record indication that the basis for the decision was that he's a member of an organized criminal entity. So it's not just the statutory provision, it's the statutory provision plus this additional factual consideration, which I don't, I'm sure you dispute the factual, the bona fides of the factual consideration. But it's true or not, but there's no dispute that that was actually part of the decision. That's correct. In fact, on May 6, 2020, the decision specifically invoked the statute and said that he was an alien, for which there is reason to believe he's a member of a known criminal organization. But that statement, known criminal organization, is as fatally vague and ambiguous as the words unlawful activity themselves. Contrast this with Munoz, the Ninth Circuit just decided, I'm sure this court is well aware, I cited it heavily in my brief and so did the government. In that case, the government provided a sworn declaration by a special agent that the applicant for the visa was a member of MS-13. They responded to interrogatories and discovery and averred the same evidence. The record has no derogatory evidence about appellant offenders whatsoever. And what you see in a lot of these cases is the government defensively introducing classified evidence, like in the Savino-Bruno case versus Albright, that this court decided there was classified evidence. In the Eberezek matter, the district court considered in camera ex parte classified evidence regarding the underlying derogatory. There is no derogatory here. How would you compare it to Dan? And with Justice Kennedy's logic in Dan, which was one of the opinions that made up the majority, and arguably the narrowest opinion that made up the majority, that was also a statutory provision that referred generally to terrorist activities. Well, that was 1182A3B, which is in the appendix to the court's opinion, and it's very specific. And that's why Justice Kennedy opined that the statutory ground of inadmissibility necessarily included a discrete factual predicate. There's no need to provide a fact in the record linking the applicant to the statutory ground of inadmissibility because the statute speaks for itself. 1182A3B says, for instance, has under circumstances indicating an intention to cause death or serious bodily harm in sight of terrorist activity, is a representative of a terrorist organization, endorses or enslouses terrorist activity. It's an extremely detailed factual predicate for application of 1182A3B. The same is not true here as to A3B2, which merely specifies any unlawful activity. And even if you couple that with the ambiguous averment by the consular officer that he's a member of a criminal organization, that is still insufficient for the bona fide element of the consular non-agreeability analysis. It provides no information. And the heart of the matter is due process. Was procedural due process afforded to Mrs. Columbus here, the United States citizen petitioner? The answer is no. She literally, to this day, we have no idea why they think Eddie is a criminal. You said procedural due process? I guess I didn't read your briefing to talk about procedural due process. I read your briefing to talk about fundamental rights and substantive due process. Well, our argument is that the marital right, the marital union, the marriage, the right to procreate, to raise a family, is a fundamental, substantive due process liberty interest going for the Fifth Amendment. But our argument is merely that, at a minimum, in consideration of that fundamental liberty interest, one should be afforded procedural due process. And that did not occur here because the consular decision was not legally legitimate and, more importantly, bona fide. So, that's the argument, is that the decision is fatally defective under any analysis of Kerry versus then, especially in Matamounos. And, again, there's no evidence in the record whatsoever derogatory to Eddie Flinders. The best evidence in the record as to the nature of his intent of travel to the United States is the life he lived here for 24 years, where he didn't even get a traffic ticket. A fine, outstanding citizen, 37 sworn letters of his good moral character in the State Department wants to keep him 2,500 miles away from his family, deprive a wife of her husband, a daughter of her father, with no explanation whatsoever. It is fundamentally constitutionally inadequate notice as a component of procedural due process. How would Ms. Flinders meaningfully respond or address, mitigate the consular officer's concerns? Which you only have a year to file a request for reconsideration, so that's come and gone because we're at three years, three to three quarters years. They have now been separated for 1,359 days. Okay, so let me thank you. Let me make sure my colleagues don't have questions for you at this time. We will give you the rebuttal time. Yes, sir. I believe I have under two minutes. It's actually the red light means that it's going to the clock's going the other direction. No, no, no, no. It's confusing. It's confusing. Thank you. We will give you rebuttal time. Ms. Reno, we'll hear from you now. May it please the court, Catherine Reno for the government. The doctrine of consular non-reviewability prohibits judicial review in this case. Although plaintiffs seek to avoid the doctrine, claiming that the refusal violates Colin Drace's constitutional rights, they tacitly concede that they cannot prevail under 65 years of precedent in the circuit. So plaintiffs implore the court to simply abandon its decisions and invent a brand new constitutional right for a United States citizen to have her non-citizen spouse enter and reside in the United States. But they present no persuasive reason for the court to take such drastic action. And in fact, a number of reasons counsel against the court doing so. The Constitution recognizes no such right. There is no evidence of such a right in the nation's history and traditions, which instead show a long history of Congress regulating spousal immigration. Neither the Supreme Court nor this court has ever recognized such a right. And instead, just three years ago, this court recognized just the opposite and found that the principle was so clear as towards some reaction. Plaintiff's position also can't be reconciled with 150 years of Supreme Court precedent, holding that the Due Process Clause is not applicable to the indirect adverse effect of government action. The lack of any constitutionally protected liberty interest here is dispositive. Without showing that plaintiffs have one, they cannot obtain judicial review. If I were in your shoes, I would have started exactly as you do with the law. And if I were in your closing counsel's shoes, I would have started where he did, which is with the facts. Do you have any response to the very powerful, I think somewhat undisputed facts that he began with? Your Honors, this no doubt is a sympathetic case, but I would be remiss if I didn't point out that plaintiffs here have had three levels of review of their visa denial already. The first consular officer who initially reviewed the visa application and refused it. Then plaintiffs sought reconsideration and a supervisor re-evaluated and considered new evidence and decided that the first consular officer had gotten it right. And more recently, in June of 2022, plaintiffs submitted a new visa application, which a third consular officer reviewed and determined that it should be refused and that the statute had been properly applied. So while sympathetic, they've had lots of review at the State Department. And there's a reason the consular non-reviewability doctrine exists. This isn't simply a situation of two private individuals, but it clashes, this right that they're seeking clashes with Congress's essentially public decision to defend the country against foreign encroachments and dangers. Congress has plenty of power. So I understand that. And I think your case is quite strong on the law that Congress has given the administration the authority to do what it's doing. And the Constitution doesn't stop that. But I think part of what I heard Mr. Dempsey say, or maybe it was implied, is that this person was in America for 24 years, came here as a child. And I was not given any explanation for why, after a mere 14 days in Guatemala, can't come back to his wife or kids. There's an implication there that the government is showing sort of contempt, not just for this person, but for, I think, other people in that situation by not even giving any kind of explanation, other than the word of, I guess you said, three consular officials, that he's a criminal even though he has no criminal record. So I'm not saying this is dispositive, but I think the government would want to assure, give assurance that it doesn't have that kind of contempt. I understand your Honor's point. And again, I would point to the fact that they had three levels of review here. And the system that has been set up doesn't require the government to provide any additional evidence. And in fact, the government here would only have been required to cite the inadmissibility statute. But it went beyond that and actually provided the fact that it had reason to believe that he was a member of a known criminal organization. So it did provide some additional factual information. Yes, so there's – even under the judgment that we had a couple of years ago in Rohrbach, there's two different ways to look at this. One is that there's not a protected interest. And the other is that even assuming there is, the reasons given by the government were stated enough, when you combine the statute plus the additional consideration you take into account, that it's satisfactory. Do you agree with me that those are alternate routes reaching the decision? And if so, what's your view on which is the better route? Yes, Your Honor, I agree. And the government's position is that the first route is all that is necessary. The court need only decide that there is no constitutional right at issue. But isn't the second one is also all that's necessary? The second – that's correct, Your Honor. So I guess I'm asking you, which one do you have a thought on which one is the better route? Yes, Your Honor, the first route that Your Honor mentioned, simply recognizing that a U.S. citizen does not have a constitutional right to have her non-citizen spouse enter and reside in the United States would be the preferred route. It is the simpler route and is consistent with this court's many decades of precedent. Why is that the preferred route? I take it you think it's simpler. Yes, Your Honor. What's non-simple about the second? What's less simple about the second? The first route would be a broader decision that could be applied in more cases potentially, whereas the second route perhaps is a more narrow way of viewing this case. I mean, I don't know. Usually we – I think generally courts prefer to do things more narrowly than broadly. So that seems like it would ogre in favor of the second route, but you're urging the first route. That's correct, Your Honor. In fact, this court has already held that. The first route in Rorbaugh in 2020, the court already recognized that there was no constitutional right violated in that case, so the court didn't need to reach the rest of its decision, although it did. It didn't have to get there. But I guess I would say the same thing about the other route, too. You can do it on the second one, and then we wouldn't have to reach the first one, I guess. So is the rationale for the first one, you think it's more clearly correct, more – you said more simple because it's just completely dictated by precedent? Yes, that is correct. It is more dictated by precedent, and it would basically be reaffirming this court's 2020 decision in Rorbaugh, as well as the principles this court articulated 65 years ago in Swartz. The government's citation of a valid inadmissibility statute here is all that was required. Because the refusal here was facially legitimate and bona fide, the court should affirm the dismissal. And if Your Honors have no – Just on the statute alone, it is pretty darn broad to have a statute that refers generally to unlawful activity. Your Honor, plaintiffs didn't properly bring a facial vagueness challenge in this case, so Your Honors are limited to the facts of this case. And in this case, the government did provide a specific factual basis that there was reason to believe that this plaintiff was a member of a known criminal organization. Right, but I mean, I think you understandably said that we don't even care about that additional fact, that the statute alone would be enough. And I guess my question is just, it's quite something to have a statute that refers generally to – does it say incidentally is one possibility, incidentally engage in unlawful activity. That's it. That's all somebody knows is that the statutory ground is that there might be incidental unlawful activity without any specification of the unlawful activity. How incidental it is, nothing like that. That alone would be enough. That's true, Your Honor. That is what the statute says, and Congress does have significant authority in this realm, and that's how Congress has chosen to write the statute. The Supreme Court has never found that the statute was unconstitutionally vague. This court has never found that statute to be unconstitutionally vague. No, I don't think the question is one of vagueness. It's not – I'm not saying that it's vague. I'm just saying that if you agree that there has to be some specification, as was presupposed in Justice Kennedy's opinion in Denn, that the statute has to speak with some specificity. This one speaks with little specificity because it just talks generally about unlawful activity. It doesn't even require that the unlawful activity be particularly likely such that it's incidental. How would you compare that to the statute in Denn? Denn actually cited the broader bar on terrorist activities. So although that statute contained many subsections that detailed various types of terrorist activities, I think there were at least 10, if not dozens, of potential activities that could have been contemplated within that. So actually, Denn wasn't all that specific. And Justice Kennedy did contemplate the difficulties that would be posed by not giving extremely specific information in his concurrence, and noted that even though perhaps Denn could more easily mount a challenge to the visa denial if she knew the specific subsection on which the consular officer relied, Congress understood this problem. And under Mandel, respect for the political branch's broad power over the immigration system extends to how much information the government is obliged to provide. So Justice Kennedy did think about this problem and still reached the decision that he did. But Mandel was a Marxist. I mean, that was the extent of the Attorney General's reasoning for not allowing him to go to Princeton and give a speech. That's right, Your Honor. And in that case, the court refused to balance the First Amendment interests of the professors there who were supporting his visa against Congress. They argued that we had a right to listen. That's correct, Your Honor. Can I return perhaps briefly to your answer to the Chief Judge's question about which route, Route 1, constitutional, Route 2, kind of getting into the statute that was cited, specificity? It seems like if we accept your invitation to go Route 1, that a consequence of that is that the government won't have to litigate these cases and won't have to explain in open court why an American citizen like Ms. I wonder if you think that's a feature or a bug of going Route 1? That's an interesting question, Your Honor. I suppose that the law wouldn't be changing if Your Honors held, reached, went with Route 1. That's already what the circuit precedent here dictates. I also want to make the point that the government here isn't destroying the marriage. They're not separating these two. Ms. Colendrase could move to Guatemala. They could move together to a third location where both are permitted to reside. The government here isn't separating these two. No, it's separation or exile. Not necessarily. As this court said in Swartz that, of course, that was a deportation context. But, of course, it would put burdens on the marriage. And it would impose the choice on the wife of living in the United States without her husband or living abroad with him. These are difficult choices. But, again, this isn't a situation where it's two private people who are both authorized to live in the United States. This clashes with Congress's power to defend our borders against dangers. And I'm with you on whether the government has the power to do this. My questions are going more to its exercise of the discretion that it's been given. I'm good. Let me make sure my colleagues don't have additional questions for you, Ms. Reno. Thank you, Ms. Reno. Mr. Dempsey, we'll give you the two minutes for rebuttal that you asked for. Thank you, Your Honor. Working backwards, the acts on this record are uncontroverted. The appellant, Mrs. Calendris, cannot live and reside in Guatemala. There is a letter from a medical provider that is uncontroverted that she has a medical condition that cannot be adequately treated in Guatemala. Therefore, life in Guatemala as an alternative to life in the United States is an impossibility. Therefore, this action not only affects the conditions of the marriage, but the possibility of the marriage itself. How do you distinguish your case from a case in which there's a married couple in the United States and the husband commits a murder and is convicted, sentenced to life? Is that a fundamental burden on the marriage? Your Honor, that husband got notice of the charges against him, an ability to confront the evidence, and a trial, presumably by a jury as peers. That due process didn't occur here. It's just like the Schwartz case, 1958, by this court. That was a deportation case. But the due process is to the individual, to the husband. And the question then becomes, does the due process clause apply to this gentleman in Guatemala? The due process clause both applies to him, but more importantly to Mrs. Glenders, the United States citizen involved, because she has an interest in her marriage that the government is depriving her of. The Supreme Court has held the due process clause doesn't apply extraterritorially. Well, Mrs. Glenders lives in Jacksonville. She's here. Johnson v. Eisenhower. Mrs. Glenders resides inside the United States, and she wants her husband here with her and her child. But she's not the one that went through the consular office. If anybody has any due process rights, and that gets you the problem that I tried to identify, is that, you know, under your theory, that the wife of the convicted murderer has due process rights. Well, she does have minimal procedural due process rights, but those are accorded by the criminal process by which her husband was convicted. There has been no notice here. We had Indiana Taliban member. We had a Mandela Marxist. What is Eddie Flinders? Nobody knows. That's the problem. The government hasn't uttered one specific factual predicate for the arbitrary decision of its consular officer. For all we know, the consular officer woke up in a bad mood that day, didn't want to deal with it, busy, busy at the window, denied. And remember, this is during the time that there is a lot of controversy about the administration of consular process in Central America. I'm out of time, Your Honors. Thank you for your consideration. Appellants respectfully request to reverse the district court decision. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Walker, Randolph